IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GRACIELA GRANDADOS, Pro Se, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:14-CV-0181 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER | § | |
| OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff GRACIELA GRANDADOS, proceeding pro se and in forma pauperis, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for a period of disability and disability insurance benefits under Title II and denying her application for supplemental security income under Title XVI. In both applications plaintiff alleged her disability began June 1, 2012. After receipt of the administrative record from the defendant and the issuance of a Scheduling Order by the Court, plaintiff failed to respond and has not identified any error in the record. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits for the period of June 1, 2012 through January 29, 2014 be AFFIRMED.

I.
## THE RECORD

Plaintiff filed an application for Title II disability insurance benefits on February 5, 2013 and a Title XVI application for supplemental security income on February 22, 2013, seeking benefits from June 1, 2012, her alleged onset date. (Tr. 17, 190, 194)[1]. Plaintiff alleged she is unable to work because of a nervous breakdown, fibromyalgia, teeth breaking/missing, lupus, and skin problems. (Tr. 217).

An attorney was appointed to assist plaintiff on August 15, 2013 (Tr. 60).

Upon review of plaintiff's initial applications and medical documentation, a State agency non-examining physician reviewed plaintiff's medical records. The Administration determined plaintiff was capable of performing her past relevant work as a medical office clerk (Tr. 68, 77) and denied plaintiff disability benefits. (Tr. 56-60, 77).

Upon reconsideration, plaintiff's medical records were reviewed by another State agency non-examining physician and her claims were denied. (Tr. 101-115 and 116-130).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) (Tr. 150–151) and a hearing was scheduled for January 9, 2014 (Tr. 164).

On January 9, 2014, an administrative hearing was held by video conference before an Administrative Law Judge (ALJ). (Tr. 36-58). At the hearing, plaintiff testified she last worked as a lab technician at an eye clinic in June 2012 (Tr. 41). She stated she had five doctors. Her primary doctor treated her for acid reflux and nausea with Ondansetron and Nexium (Tr. 42). She testified her psychiatrist was treating her for schizophrenia with Saphris, an antipsychotic

---

[1]Plaintiff had an earlier DI and DIB claim filed May 9, 2011 which was denied July 28, 2011 (Tr. 62).

medication (Tr. 42) and also treated her for and severe depression (Tr. 42). Plaintiff submitted a list showing the name of each treating doctor and listing the medications each doctor had prescribed as treatment (Tr. 42).

Plaintiff testified that, on an average day, she gets up and tells her daughter to get up and get ready for school (Tr. 43). Plaintiff said she is always in constant pain and getting out of bed was difficult, but that her rheumatologist had been helpful. Sometimes, if it is a bad day, she does not get out of bed. Plaintiff testified her brother takes her daughter to school and sometimes plaintiff goes along with them. She said when she got back, she didn't eat but would go to her room, close the door, and clean it at her own pace. Plaintiff stated when her daughter got back from school she would make a cup of noodles for her or let her make it for herself. She said her daughter had also learned how to cook eggs. Plaintiff testified than she and her daughter would then review her daughter's school materials and talk about school. (Tr. 43). Plaintiff concluded, "That's my life."

Plaintiff testified she was right handed and her entire right side hurt, although the Prednisone and weekly shots from her rheumatologist had helped (Tr. 44). She said she wore a shoe brace (Tr. 44). Plaintiff stated she was diagnosed with lupus in 2003 and is being treated for it. She said she suffered fibromyalgia which affected her "everywhere." Plaintiff testified she used to walk five miles a day before she went to work, but didn't anymore (Tr. 45). Plaintiff said she suffered swelling or edema of the face, neck, chest, back, legs, hands, and feet, which is treated with medication for her rheumatoid arthritis and that it has helped a lot (Tr. 45).

Plaintiff further testified she could walk about 30 feet and then needed to sit down. She said she did not use a cane or crutch, but had a brace on her right side for walking (Tr. 46).

Plaintiff stated she could stand for about 10 or 15 minutes and then had to sit down (Tr. 47). She said she could lift about 2 or 3 pounds and, when she shopped at the grocery store, her brother and daughter or her brother's workers would take the bags of groceries into the house (Tr. 47).

Plaintiff testified she could climb stairs if she held onto the rail and that she could reach with her left arm, but not with her right. (Tr. 48). When asked what problems she would have if she went back to her old job, plaintiff said she couldn't focus on her work anymore or communicate with people (Tr. 48). She complained of pain all over her body and said she had found out in June she had a headache that wouldn't go away (Tr. 48-49). She said physicians had found a benign tumor that was not operable and that her head was always hurting (Tr. 49). Plaintiff said the medications she was prescribed only dulled the pain and that, without medication, the pain made her nauseous (Tr. 49).

Plaintiff's daughter, Aliceagro Granados, also testified. She stated plaintiff had lived with her on and off over the last four or five years (Tr. 49), and that plaintiff had suffered an episode the previous summer during which she was unresponsive and was hospitalized two days (Tr. 50).

Plaintiff stated the doctors discovered her tumor and that was when she began seeing a neurologist (Tr. 52). She said she sometimes suffered convulsions and was scheduled to see the neurologist later that month to be admitted for three days to monitor her seizures and headaches (Tr. 52).

Ann Young, a vocational expert, testified next, stating that plaintiff's work history consisted of the following: (1) eye technician, skilled, level SVP: 6, performed at medium exertional level; (2) a medical office clerk, semi-skilled, level SVP: 4, performed at sedentary

exertion; (3) secretary, skilled, level SVP: 6, performed at light exertion; (4) family representative, skilled, level SVP: 7, performed at light exertional level; and (5) teacher assistant, semi-skilled, level SVP: 3, performed at light exertion. (Tr. 53).

The ALJ posed a hypothetical of a 47 year old woman with two years of college, with good ability to read and write and use numbers, who could perform a full range of light and sedentary work and who suffered the same onset date, who has been diagnosed with affective disorder, anxiety related disorder and who had limitations of performing only simple, unskilled work, can relate to co-workers and supervisors for work-related purposes only, has minimal or no contact with the general public, is afflicted with symptomatology from a variety of sources for which she takes medication for relief which left her reasonably alert to perform her prior functions in the work settings. The ALJ then asked if such an individual could return to any of plaintiff's past relevant work as plaintiff described it or as it is customarily performed. The Vocational Expert replied the hypothetical woman could not (Tr. 54).

The ALJ then asked if there were any unskilled jobs the hypothetical person could perform, and the Vocational Expert replied there were. As a sampling, the vocational expert listed the following jobs: (1) DOT code 361.687-014, laundry sorter, unskilled, SVP: 2, light exertion, with 12,000 such positions in Region 6 and 177,000 nationally; (2) DOT code 920.687-126. marker, unskilled, SP: 2, light exertion, with 8,000 such positions in Region 6 and 120,000 nationally; and (3) DOT code 726.685-066, assembler, unskilled, SVP; 2, sedentary exertion, with 700 such positions in Region 6 and 93,000 nationally (Tr. 55).

The ALJ then asked if, assuming plaintiff's testimony as given at the hearing was found to be credible and was verified by third-party medical evidence in the record, would the

hypothetical individual with the same education, background, good ability to read and write and use numbers, be able to do any of plaintiff's past relevant work. The Vocational Expert responded she would not (Tr. 55).

The Vocational Expert testified that, giving full credibility to the limitations and restrictions to which plaintiff had testified, the hypothetical individual would not be able to perform any of the jobs previously identified by the V.E. (Tr. 56). The Vocational Expert pointed out plaintiff's testimony of cognitive problems, allusions to auditory and visual hallucinations, and pain all over her body which is sometimes severe, her testimony of headaches, memory problems, and some convulsions or seizures, with difficulties in concentration and focus, as well as limitations concerning stamina, all of which indicate she would have difficulty maintaining a regular job assignment or sustaining a regular work schedule. (Tr. 56).

Lastly, the plaintiff testified that her psychiatrist had already told her she should not be working and has recommended that she file for disability. Although he had given her psychotic medication for her schizophrenia, sometimes she still heard voices or saw someone following her. He had also told her not to drive and that she should not be in a room with too many people because she became claustrophobic. (Tr. 57).

On January 29, 2014, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not under a disability as defined by the Social Security Act at any time from June 1, 2012 through January 29, 2014. (Tr. 17-29).

The ALJ determined plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. (Tr. 19). The ALJ found plaintiff had not engaged in

substantial gainful activity since June 1, 2012, the alleged onset date. (Tr. 19). The ALJ determined plaintiff had the following severe impairments: affective mood disorders, fibromyalgia, lupus, skin problems, and dental problems. The ALJ found each of these impairments was severe, and caused more than minimal functional limitations in plaintiff's ability to perform basic work activities. (Tr. 19).

At step 3, the ALJ found plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 426.915 and 426.926).

At step 4 of the evaluation process, the ALJ determined plaintiff's residual functional capacity to be the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in a 8-hour workday, and to be limited to occasional reaching overhead with the right shoulder. He found plaintiff was maximally able to understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors and respond appropriately to changes in a routine work setting. He found plaintiff would have symptoms of mild to moderate pain that is noticeable to her at all times but that she would be able to remain reasonably alert. (Tr. 21).

The ALJ found plaintiff did not have the residual functional capacity to perform the requirements of her past relevant work. (Tr. 21).

At step 5 of the evaluation process, the ALJ noted plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged but found

plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms not to be entirely credible (Tr. 22-23).

The ALJ determined plaintiff was not capable of performing the full range of light work. He noted the record did not contain any opinions from treating or nontreating physicians indicating plaintiff was disabled or had limitations greater than those set forth in his ALJ decision and that the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services were consistent with the medical evidence of record (Tr. 27). The ALJ recognized those physicians were non-examining and their opinions did not deserve as much weight as the opinions of examining and treating physicians, but noted the state agency physicians were experts in assessing the physical and mental limitations caused by various medical conditions and that they had concluded plaintiff could perform at the light exertional level with the non-exertional limitations as determined by the ALJ (Tr. 27).

Utilizing the vocational expert (VE) testimony, the ALJ determined that, through the date last insured, and considering plaintiff's RFC, age, education, and past relevant work experience, plaintiff, although not capable of performing the full range of light work, was capable of making a successful adjustment to other work that existed in significant numbers in the regional and national economies, *viz.*, (1) DOT code 361.687-014, laundry sorter, unskilled, SVP: 2, light exertion, with 12,000 such positions in Region 6 and 177,000 nationally; (2) DOT code 920.687-126. marker, unskilled, SP: 2, light exertion, with 8,000 such positions in Region 6 and 120,000 nationally; and (3) DOT code 726.685-066, assembler, unskilled, SVP; 2, sedentary exertion, with 7,000 such positions in Region 6 and 93,000 nationally (Tr. 55).

On May 7, 2014, the Appeals Council denied plaintiff's request for review rendering the ALJ's determination that plaintiff was not under a disability during the relevant time period the final decision of the Commissioner. (Tr. 7-9). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found

plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUE

By her complaint, plaintiff argues none of the new information she brought to the ALJ hearing was taken into consideration.  Plaintiff has not, however, identified any specific information she contends was ignored by the ALJ nor has she identified any defects or omissions in the record or supplied the Court with a copy of any records she thinks are missing.  Plaintiff reiterates she was diagnosed with lupus in 2003 and had a nervous breakdown in 2012 and that her condition has not improved.  It appears plaintiff is arguing that there is no substantial evidence to support the ALJ's determination.

IV.
MERITS

A.  RFC Evaluation

As noted above, the ALJ determined plaintiff had severe physical impairments of: (1) affective mood disorders, (2) fibromyalgia, (3) lupus, (4) skin problems, and (5) dental problems.  He further determined each of these impairments was severe, and caused more than minimal functional limitations in plaintiff's ability to perform basic work activities.  (Tr. 19).

In evaluating whether plaintiff's mental impairments met a listing, the ALJ evaluated the impairments under the Part "B" criteria used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  (Tr. 17-18).  In doing so, the ALJ found

plaintiff's mental impairments caused mild restrictions of activities of daily living, moderate difficulties in social functioning, and moderate difficulties in the area of concentration, persistence or pace (Tr. 20).[2] The ALJ cited plaintiff's activities of daily living from plaintiff's testimony at the ALJ hearing (Tr. 36-58) and the Function Report plaintiff filled out as the basis of his findings (Tr. 239-245).

The ALJ specifically considered evidence of episodes of decompensation, finding plaintiff had experienced one to two episodes of decompensation, each of extended duration, as shown by plaintiff's admission to the Pavilion on July 23, 2012 for psychiatric admission (Tr. 275-308). Nevertheless, the ALJ found plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, thus failing to satisfy the paragraph B and paragraph C criteria (Tr. 20).

The ALJ further found that despite these mild restrictions and moderate difficulties, plaintiff could "understand, remember and carry-out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors and respond appropriately to changes in a routine work setting." (Tr. 21).

Review of plaintiff's testimony during the ALJ hearing (Tr. 36-58) and the Function Report plaintiff filled out (Tr. 239-245) reveals sufficient evidence to support the ALJ's evaluation of plaintiff's mental impairments.

Further, review of the medical evidence of record does not reveal any evidence rebutting

---

[2]"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C3.

that evaluation.  In response to a Treating Physician Mental Functioning Assessment Questionnaire, plaintiff's treating psychiatrist, Dr. Natividad, referred the examiner to his clinic notes, which were attached.  Review of those notes shows plaintiff's diagnosis as of October 20, 2012 was "Major Depressive Disorder, Recurrent, Mild."  (Tr. 310).  Plaintiff's complaints in January and February of 2013 that she was hearing "whispers" or experiencing hallucinations did not lead to a change in the diagnosis.  (Tr. 314-318).  In December of 2013, plaintiff's diagnosis was still "Major Depression, Severe, Without Psychosis."  (Tr. 592).  While plaintiff was encouraged by her counselor to file for disability (Tr. 592), her records do not contain evidence of findings which would support a determination of disability based on mental limitations.

As to her physical limitations, in addition to considering plaintiff's ALJ hearing testimony (Tr. 36-58) and the Function Report plaintiff filled out (Tr. 239-245), the ALJ also considered all of plaintiff's medical records.  Plaintiff does not argue that any specific medical condition was ignored, only that certain new information she brought to the ALJ hearing was ignored.  Plaintiff's medical records, however, appear to have been thoroughly reviewed and summarized in the ALJ's opinion and, in large part, her complaints of pain and disability are generally credited, but not to the degree they are per se disabling.  Other than her testimony, plaintiff has not identified anything in the record which supports her claims of constant unremitting pain of such severity as to be totally disabling.  Further, plaintiff testified that the treatment and medications provided by her doctor for her arthritis, lupus, and fibromyalgia have helped her (Tr. 45) and the medication for her headaches have dulled her headache pain, though it left her nauseous (Tr. 53).

Plaintiff has not pointed to any objective medical evidence demonstrating she had

limitations more restrictive than the ALJ's RFC finding. More importantly, plaintiff has not shown there was insufficient evidence to support the ALJ's evidentiary determination and/or credibility decision. Plaintiff's ground of error should be denied.

Although the undersigned recommends the administrative decision of not disabled be affirmed, the Court notes the ALJ found plaintiff's earnings record shows that she has sufficient quarters of coverage to remain insured through September 30, 2016 [Tr. 17]. Therefore, if plaintiff has new and/or additional evidence of disability for the period after January 29, 2014 through September 30, 2016, such may support a new claim for another period of disability.

V.
RECOMMENDATION

While plaintiff certainly does not appear to be pain free and appears to be experiencing various medical issues, the administrative determination of not disabled is supported by a sufficient evidentiary basis.

It is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of benefits from June 1, 2012 through January 29, 2014 be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

      IT IS SO RECOMMENDED.

      ENTERED this 22nd day of February, 2016.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * <u>NOTICE OF RIGHT TO OBJECT</u> *

      Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

      Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).